# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC.,**<br><br>101 Huntington Ave., Suite 1300,<br>Boston, Massachusetts 02199,<br><br>**BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC.**<br><br>101 Huntington Ave., Suite 1300,<br>Boston, Massachusetts 02199<br><br>          Plaintiffs,<br><br>v.<br><br>**ROBERT F. KENNEDY JR.**, in his official capacity as Secretary of Health and Human Services, U.S. Department of Health and Human Services<br><br>200 Independence Avenue SW<br>Washington, D.C. 20201,<br><br>and<br><br>**STEPHANIE CARLTON**, in her official capacity as Acting Administrator, Centers for Medicare and Medicaid Services,<br><br>7500 Security Boulevard<br>Baltimore, Maryland 21244,<br><br>          Defendants. | Case No. _____ |

## COMPLAINT

Plaintiffs Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBSMA") and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. ("HMO Blue") (collectively with BCBSMA "Plaintiffs"), by and through undersigned counsel, hereby submit their Complaint for relief against

Defendants Robert F. Kennedy Jr., in his official capacity as Secretary of the U.S. Department of Health and Human Services ("HHS"), and Stephanie Carlton, in her official capacity as Acting Administrator of the Centers for Medicare and Medicaid Services ("CMS"), to challenge unlawful, arbitrary and capricious final agency action related to the Star Ratings system for Medicare Advantage and Part D health plan contracts, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 551-559 and 701-706.

## PRELIMINARY STATEMENT

1.    Medicare Advantage Star Ratings ("Star Ratings") are a critical aspect of the Medicare Advantage program, as they are designed to measure a Medicare Advantage Organization's ("MAO") quality and performance, which in turn drives enrollment and enhances payments that plans use to improve member benefits. Last year, at least two successful lawsuits were brought against CMS in this Court due to unlawful and arbitrary and capricious conduct in calculating 2024 Star Ratings.[1] This year, numerous MAOs have filed lawsuits challenging CMS's calculation of 2025 Star Ratings, including three pending in this Court.[2] Unfortunately, Plaintiffs must join the chorus of MAOs challenging the 2025 Star Ratings due to Defendants' arbitrary and capricious conduct and actions contrary to law.

---

[1]    *See Elevance Health, Inc. v. Becerra*, 736 F. Supp. 3d 1, 57-58 (D.D.C. 2024); *Scan Health Plan v. HHS*, No. 1:23-cv-03910 (CJN), 2024 WL 2815789, at *4 (D.D.C. June 3, 2024).

[2]    *See Centene Corp. et al. v. Becerra et al.*, No. 4:24-cv-01415 (E.D. Mo. filed Oct. 22, 2024); *HMO Louisiana, Inc. v. U.S. Dep't of Health and Hum. Servs.*, No. 1:24-cv-02931 (D.D.C. filed Oct. 17, 2024) (pending before Judge Cooper); *Humana Inc. et al. v. U.S. Dep't of Health and Hum. Servs.*, No. 4:24-cv-01004 (N.D. Tex. filed Oct. 18, 2024); *UnitedHealthcare Benefits of Texas, Inc. et al.*, No. 24-357 (E.D. Tex. filed Sept. 30, 2024); *Elevance Health, Inc. et al. v. Becerra et al.*, No. 24-1064 (N.D. Tex. filed Oct. 31, 2024); *Blue Cross and Blue Shield of Florida, Inc. et al. v. U.S. Dep't of Health and Hum. Servs. et al.,* No. 24-3609 (D.D.C. filed Dec. 27, 2024) (pending before Judge Mehta); *Alignment Healthcare Inc. v. U.S. Dep't of Health and Hum. Servs. et al.*, No. 25-74, (D.D.C. filed Jan. 10, 2025) (pending before Judge Cooper).

2.      Specifically, Plaintiffs are forced to bring this suit to rectify CMS's unlawful application of a "case-mix adjustment" when calculating Plaintiffs' Star Ratings. These case-mix adjustments are not only unlawful, but they can have serious consequences for plans. Indeed, even minor case-mix adjustments in Consumer Assessment of Healthcare Providers & Systems (CAHPS) survey measure scores can significantly impact plans, including causing a measure score to achieve a lower Star Rating and a plan to achieve a lower overall Star Rating.

3.      BCBSMA has suffered severe consequences as a direct result of CMS's violations of law. Specifically, CMS determined the Star Rating for Plaintiffs' contract known as H2230 to be 3.5 Stars and the Star Rating for Plaintiffs' contract known as H2261 to be 3.5 Stars. However, CMS's case-mix adjustments to the contracts' CAHPS raw measure scores negatively impacted the contracts' measure scores, resulting in a lower overall Star Rating. Had CMS followed applicable regulations, both H2230 and H2261 would have achieved 4 Stars instead of 3.5 Stars. Due to CMS's actions, BCBSMA has been damaged by at least $35 million, which directly harms both Plaintiffs and Medicare beneficiaries as these funds are reinvested in the plans to, among other things, decrease costs and improve member benefits.

### JURISDICTION AND VENUE

4.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331. This action arises under the Medicare Act, 42 U.S.C. § 1395 *et seq*.; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702 and 706; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

5.      Venue is proper under 28 U.S.C. § 1391(e).

6.      Plaintiffs timely filed the Complaint. *See* 28 U.S.C. § 2401.

## PARTIES

7.      BCBSMA is a not-for-profit medical service corporation and independent licensee of the Blue Cross and Blue Shield Association with its principal place of business in Boston, Massachusetts. BCBSMA develops innovative services, benefits, and plans aimed at improving healthcare affordability and the quality of care for each of its members.

8.      BCBSMA operates numerous health plans serving residents and businesses in the state of Massachusetts that provide medical and prescription coverage to Medicare beneficiaries under Medicare Parts C and D. BCBSMA and its subsidiaries enter into contracts with Defendants to provide coverage to Medicare beneficiaries under Medicare Parts C and/or D. HMO Blue, a direct subsidiary of BCBSMA, has entered into the following contracts at issue:

      a.   HMO Blue has entered a contract with CMS designated as H2230; and

      b.   HMO Blue has entered a contract with CMS designated as H2261.

9.      BCBSMA is the designated "parent organization" of contracts H2230 and H2261. For each contract, MAOs are required to identify the parent organization, the legal entity that exercises a controlling interest in the organization that holds the actual contract. *See* 42 C.F.R. § 422.2.

10.      Defendant Robert F. Kennedy Jr. is sued in his official capacity as the Secretary of HHS. This includes overseeing the operations of CMS. Secretary Kennedy, in his official capacity, is responsible for implementing and complying with federal law, including the federal laws impacted by this action.

11.      Defendant Stephanie Carlton is sued in her official capacity as Acting Administrator of CMS, an operating division of HHS. As Acting Administrator, Ms. Carlton is responsible for the administration of the Medicare health program, including Medicare Parts C and

D. Acting Administrator Carlton, in her official capacity, is responsible for implementing and complying with federal law.

## FACTUAL ALLEGATIONS

### I.    The Medicare Advantage Program and Star Ratings

12.    HHS administers the Medicare Program through CMS. The Medicare program, authorized under Title XVIII of the Social Security Act, provides healthcare benefits for people 65 and older and under 65 with certain disabilities or diseases.

13.    Medicare-eligible individuals may choose to receive medical benefits through Medicare Parts A and B (often referred to as "original" or "traditional" Medicare) or Medicare Part C—known as the Medicare Advantage Program—as enacted by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003.

14.    Under Medicare Parts A and B, individuals may receive Medicare benefits directly from the federal government. *See* 42 U.S.C. §§ 1395c to 1395i-6 (Part A); 42 U.S.C. §§ 1395j to 1395w-6 (Part B).

15.    Under the Medicare Advantage Program, CMS contracts with private organizations referred to as Medicare Advantage Organizations ("MAOs"). Medicare eligible individuals may enroll in health plans offered by the MAO and the MAO provides Medicare benefits to their enrollees.

16.    Medicare beneficiaries may also obtain prescription drug coverage through Medicare Part D. Part D prescription drug benefits are covered through organizations that contract with CMS to offer health plans that cover prescription drugs. Plans may offer both standalone prescription drug coverage ("PDPs") for individuals enrolled in traditional Medicare and drug

coverage with a Medicare Advantage plan (an "MA-PD" plan). *See* 42 U.S.C. § 1395w–101(a)(1), (3)(C).

17.    In 2008, CMS began publishing annual Star Ratings for MAOs. CMS determines Star Ratings by analyzing certain data sets, ultimately rating each plan on a scale of 1 to 5 Stars. *See* 42 U.S.C. § 1395w-23(o); 42 C.F.R. Part 422, Subpart D. According to CMS, Star Ratings aim to help Medicare beneficiaries "compare the quality of Medicare health and drug plans being offered so they are empowered to make the best health care decisions" and provide "meaningful information about quality, alongside information about benefits and costs, to assist them in comparing plans and choosing the Medicare coverage option that best fits their health needs."[3]

18.    Star Ratings are based on a 5-Star scale, set in half-star increments, with 1 Star being the lowest rating and 5 Stars being the highest. *See* 42 C.F.R. §§ 422.162(b), 422.166(h)(1)(ii). CMS calculates Star Ratings by individually scoring (1- to 5-Star score) several "measures" that fall into broad categories designed to measure the quality of a plan. CMS calculates the score for each measure, assigns each measure a certain weight, and then calculates an overall weighted Part C and Part D summary Star Rating and overall Stars Rating for each plan.

19.    Medicare-eligible individuals can begin to enroll in MAOs during the "annual enrollment period," which is from October 15, 2024 to December 7, 2024. 42 U.S.C. § 1395w-21(e)(3)(B)(v). Medicare beneficiaries can continue to enroll in plans after the annual enrollment period, during the Medicare Advantage "open enrollment period" that takes place from January 1, 2025 through March 31, 2025. To facilitate the plan selection process and assist Medicare

---

[3]    *See, e.g., 2025 Medicare Advantage and Part D Star Ratings*, CTRS. FOR MEDICARE & MEDICAID SERVS. (October 10, 2024), https://www.cms.gov/newsroom/fact-sheets/2025-medicare-advantage-and-part-d-star-ratings#:~:text=Approximately%2040%25%20of%20MA%2DPDs,%20or%20more%20stars%20in%202025.

beneficiaries in choosing the coverage that is right for them, CMS maintains a website known as the "Medicare Plan Finder," which displays certain information about available plans, including the Star Ratings for the upcoming plan year. *See* 42 C.F.R. § 422.166(h).

20.    CMS's Star Ratings significantly impact enrollment in an MAO. On October 10, 2024, CMS published Star Ratings through the Medicare Plan Finder. Beginning October 15, Medicare beneficiaries, including any agents and brokers who assist them, began to rely upon the ratings in selecting plans. As stated by CMS, Star Ratings are intended to be used by Medicare beneficiaries to identify plans that CMS has identified as higher quality relative to other choices and, therefore, plans with higher Star Ratings have a significant advantage in enrolling beneficiaries.

21.    CMS's Star Ratings also impact member benefits. Under the Congressionally mandated "Quality Bonus Payment" program, MAOs that receive an overall Star Rating of 4 or more are entitled to higher payments from Defendants. MAOs reinvest these funds into plans to improve healthcare affordability and the quality of member benefits and services.

22.    MAOs also submit annual bids each year that CMS scores against a benchmark financial target. If an MAO submits a bid below the benchmark, the plan may retain a portion of the savings, referred to as a "rebate." An MAO's Star Rating affects the amount of rebate the plan can retain. Specifically, plans with a Star Rating of 3 or lower keep 50% of the rebate; plans with a Star Rating of 3.5 or 4 keep 65% of the rebate; and plans with a Star Rating of 4.5 or 5 keep 70% of the rebate. Plans must use rebates to reduce premiums, coinsurance and/or cost-sharing, and/or increase member benefits. Thus, MAOs with higher Star Ratings can offer more competitive pricing and benefits to potential members and ensure that current members retain existing benefits.

## II.  How CMS Calculates Medicare Advantage Star Ratings

23.    An MAO's annual Star Rating is calculated as the weighted average of its Star Ratings across several individual measures. CMS designates certain measures that it intends to use in any given year for Medicare Advantage, Part D, or MA-PD plans. For 2025 Star Ratings, MA-PD plans are rated on up to 40 unique quality and performance measures applicable to both Part C and Part D, whereas Medicare Advantage-only contracts are rated on approximately 30 Part C measures. Each measure is derived from a specified data source that, pursuant to the applicable statute, must have existed as of November 1, 2023. *See* 42 U.S.C. § 1395w–23(o); *see also* 42 U.S.C. § 1395w–22(e).

24.    To calculate an MAO's overall Star Rating, CMS scores each measure on a numerical scale based upon an analysis of the data CMS collects for each specific measure. CMS converts the numerical scores into measure-specific Star Ratings on a five-star scale by determining "cut points" to separate each contract into whole star increments. 42 C.F.R. §§ 422.166(a)(4), 423.186(a)(4). Measure scores for all contracts involve the conversion of granular data across the industry into cut points, so even minor data changes can result in movements in the cut points which in turn can lead to significant changes in an MAO's measure-specific Star Ratings. Because those measure-specific Star Ratings are then used on a weighted basis to calculate the overall Star Rating, even small changes in the cut points can profoundly impact the overall Star Rating.

## III.  CMS's Methodology for Calculating CAHPS Measure Scores

25.    CMS utilizes two detailed methodologies for calculating MA Star Ratings: (1) clustering and mean resampling for non-CAHPS measures; and (2) relative distribution and significance testing for CAHPS measures. 42 C.F.R. §§ 422.166(a)(2), (3); 423.186(a)(2), (3).

26.    "CAHPS" refers to the Consumer Assessment of Healthcare Providers & Systems survey, a survey conducted by CMS vendors that measures beneficiaries' experiences with their health plans. *See, e.g.,* 42 C.F.R. § 422.162(a). CAHPS survey scores are among the categories of data sources used to calculate member experience measures for Star Ratings.

27.    Relevant here, for measures that are based on CAHPS survey data, CMS uses the relative distribution and significance testing methodology. 42 C.F.R. § 422.166(a)(3). The regulations provide that the methodology used for CAHPS calculations in fact "accounts for the reliability of scores produced from survey data." *See* 42 C.F.R. § 422.166(a)(3). Presumably to account for the particular challenges of a survey methodology, the regulations provide for adjustments to an MAO's individual scores in various circumstances. For example, under the regulations, "no measure Star Rating is produced if the reliability of a CAHPS measure is less than .60." *See id*. Likewise, the regulations provide additional overrides on the scoring of a CAHPS measure between 1 – 5 Stars, including how an MAO's score compares to the national average CAHPS score for that measure and/or whether the score is determined to be reliable. *See id.*

28.    Despite the clear regulatory methodology, CMS has developed sub-regulatory guidance that deviates from the regulatory requirements. Specifically, CMS applies a "case-mix adjustment" to "take into account differences in the characteristics of enrollees across contracts that may potentially impact survey responses," such as an enrollee's age and education. *See* CTRS. FOR MEDICARE AND MEDICAID SERVS., MEDICARE 2025 PART C & D STAR RATINGS TECHNICAL NOTES ("2025 Technical Notes"), at p. 153. Case-mix adjusted scores are then classified into "base groups" by reference to "percentile cut points defined by the current-year distribution of case-mix adjusted contract means." 83 Fed. Reg. at 16568. Percentile cut points are set at the 15th, 30th, 60th, and 80th percentiles. *See* 42 C.F.R. §§ 422.166(a)(3), 423.186(a)(3).

29.    In other words, CMS takes the raw CAHPS score for the contract and then adjusts the score up or down based upon the case-mix for the contract. However, the applicable regulations do not provide for this case-mix adjustment when performing the relative distribution and significance testing methodology to determine the contract's measure-specific Star Rating.[4] *See, e.g.,* 42 C.F.R. § 422.166(a)(3). Indeed, case-mix adjustments are only referenced with respect to determining the "Categorical Adjustment Index" (which is a different adjustment to Star Ratings required by 42 C.F.R. § 422.166(f)(2)) and the Health Equity Index (which is a new Stars factor that does not apply until the 2027 Star Ratings per 42 C.F.R. § 422.166(f)(3)).

30.    After CMS applies this improper case-mix adjustment to the CAHPS data, CMS compares the contract's score to the national weighted average and adjusts a contract's measure Star Rating from the base group if the case-mix adjusted score for the measure transgresses a certain statistical distance away from the measure. CMS's application of the case-mix index and further adjustment thereof is not contemplated by the applicable statute or regulations, and because even small changes in measure scores can cause a measure to achieve a different Star Rating, it can have significant negative impacts. Further, CMS acted contrary to its own regulations—which require a comparison to the "national average"—when it compared the scores to the national *weighted* average. *See* 42 C.F.R. § 422.166(a)(3).

**IV.    CMS Acted Arbitrarily and Capriciously and Contrary to Law in Calculating the CAHPS Measure Scores and Overall 2025 Star Ratings in Violation of 42 CFR § 422.166**

31.    CMS violated its regulations and acted arbitrarily and capriciously when it calculated CAHPS measures by adjusting for the case-mix index.

---

[4]    CMS also applies a case-mix adjustment to a non-CAHPS measure *C15 - Plan All-Cause Readmissions*, and this case-mix adjustment application is likewise not addressed in the regulations. *See* 2025 Technical Notes, at p. 54-55.

32.     CMS's application of case-mix adjustments to Plaintiffs' contracts H2230 and H2261 resulted in arbitrary adjustments for various CAHPS measures. As a result, CMS calculated the overall Star Ratings for contracts H2230 and H2261 at 3.5 Stars instead of 4 Stars.

33.     CMS's arbitrary and capricious conduct and unlawful actions caused Plaintiffs at least $35 million in damages for contracts H2230 and H2261 in the form of diminished member enrollment and lost quality bonus payments, which would be used to increase benefits to the Medicare beneficiaries that Plaintiffs serve.

## V.     Final Agency Action

34.     CMS's Star Ratings decision for Plaintiffs, which includes among other things the agency's final decision about Plaintiffs' Star Scores, is a final agency action within the meaning of 5 U.S.C. § 704.

35.     CMS's Star Ratings decision is an "order" constituting an agency's final disposition in a matter other than rule making and, therefore, qualifies as an agency action within the meaning of 5 U.S.C. §§ 551(6) and (13).

36.     On October 10, 2024, CMS published the final Star Ratings on the Medicare Plan Finder. CMS's Star Rating decision is a final agency action because the ratings are publicly available and announced for current and potential beneficiaries to consider and rely on during 2025 enrollment.

37.     Further, CMS's Star Ratings decision is a final agency action because it determines Plaintiffs' legal rights and obligations and otherwise triggers legal consequences for Plaintiffs, including, but not limited to, impacts to member enrollment and quality bonus payments.

38.     Plaintiffs are unable to mitigate the harm resulting from CMS's Star Ratings because CMS lacks a process for relief that could render a decision in time. Federal regulations provide for a non-mandatory informal reconsideration and hearing process for CMS's quality

bonus payment ("QBP") determinations. 42 C.F.R. § 422.260. But the informal QBP reconsideration process occurs after CMS's final decision and publication of the Star Ratings and prevents Plaintiffs from raising the challenges raised here as it specifically excludes any consideration of methodology challenges. BCBSMA has utilized the reconsideration process for challenges to the inclusion of a specific call in its D01 call center measure, and that appeal is ongoing.[5] BCBSMA also reserves the right to utilize the informal QBP reconsideration process where appropriate for additional issues that may be later supplemented here, as applicable.

39.    Accordingly, Plaintiffs have been forced to file this action as Plaintiffs stands to suffer reputational harm, loss of potential and actual customers, and millions of dollars unless this Court intervenes.

## CLAIMS FOR RELIEF

### *First Claim for Relief*

*(Violation of Administrative Procedure Act – Arbitrary and Capricious Agency Action and Contrary to Law)*

40.    Plaintiffs incorporate the Paragraphs 1 through 39 of this Complaint as if set forth fully herein.

41.    The APA, 5 U.S.C. §§ 551-559 and 701-706, provides for judicial review to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . ." 5 U.S.C. § 702. Under 5 U.S.C. § 706(2)(A), an agency action can be held unlawful and set aside if it is "arbitrary, capricious . . . or otherwise not in accordance with law."

42.    CMS is responsible for administering the Medicare program, including the Medicare Star Rating system.

---

[5]    Plaintiffs reserve all rights, claims, causes of action, and otherwise, including, but not limited to, the right to amend this Complaint to include any claims related to its D01 call center measure ratings and any administrative decisions related to its D01 claims.

43.    CMS violated its regulations and acted arbitrarily and capriciously when it calculated CAHPS measures by adjusting for the case-mix index.

44.    CMS's actions damaged Plaintiffs with respect to the measures and overall Star Rating for contracts H2230 and H2261.

45.    CMS's arbitrary and capricious conduct and actions contrary to the law have caused Plaintiffs at least $35 million in damages related to contracts H2230 and H2261 alone in the form of lost quality bonus payments, which would be used to increase benefits to Plaintiffs' members.

46.    Plaintiffs therefore respectfully request the relief as prayed for below.

### ***Second Claim for Relief***

*(Declaratory Judgment)*

47.    Plaintiffs incorporate Paragraphs 1 through 46 of this Complaint as if set forth fully herein.

48.    CMS's calculation of the 2025 Star Ratings is a final agency action made reviewable by 5 U.S.C. § 706(2).

49.    CMS's calculation of Plaintiffs' 2025 Star Ratings adversely affected and harmed Plaintiffs.

50.    Plaintiffs request a declaration from this Court under 28 U.S.C. § 2201 that Defendants' application of the case-mix index to adjust CAHPS measures in calculating Plaintiffs' 2025 Star Ratings violated Defendants' own regulations and is accordingly arbitrary and capricious and contrary to law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.    Enter judgment against Defendants and in favor of Plaintiffs for each count alleged in this Complaint;

B.      Order Defendants to recalculate CAHPS measures for Plaintiffs' contracts H2230 and H2261 without adjusting for case-mix, consistent with applicable regulations;

C.      Order Defendants to recalculate the overall Star Ratings for Plaintiffs' contracts H2230 and H2261 to 4.0 Stars; and

D.      Grant such other and further relief as the Court deems just and proper.

Dated: March 7, 2025                    Respectfully submitted,


                                        By: */s/ Lesley C. Reynolds*

                                        Lesley C. Reynolds
                                        District of Columbia Bar No. 487580
                                        Lara E. Parkin
                                        District of Columbia Bar No. 475974
                                        David A. Bender
                                        District of Columbia Bar No. 1030503
                                        REED SMITH LLP
                                        1301 K Street, N.W.
                                        Suite 1000 – East Tower
                                        Washington, D.C. 20005
                                        (202) 414-9200 telephone
                                        (202) 414-9299 facsimile
                                        lreynolds@reedsmith.com
                                        lparkin@reedsmith.com
                                        dbender@reedsmith.com

                                        Steven D. Hamilton (*pro hac vice forthcoming*)
                                        Bryan M. Webster (*pro hac vice forthcoming*)
                                        REED SMITH LLP
                                        10 South Wacker Drive
                                        40th Floor
                                        Chicago, IL 60606
                                        (312) 207-1000 telephone
                                        (312) 207-6400 facsimile
                                        shamilton@reedsmith.com
                                        bwebster@reedsmith.com

                                        *Counsel for Plaintiffs Blue Cross and Blue Shield of Massachusetts, Inc. and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of March, 2025, a true and correct copy of this

Complaint was filed via the Court's CM/ECF system.

/s/ Lesley C. Reynolds
Lesley C. Reynolds